UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| LAURA CORINA MCCORD, § | |
| Plaintiff, § | |
| § | |
| v. § | NO. EP-21-CV-00082-LS |
| § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff appeals the denial of her application for disability insurance benefits. The parties consent to my determination of the case under 28 U.S.C. § 636(c) and Appendix C of the Local Court Rules for the Western District of Texas. I **AFFIRM** the Commissioner's decision denying McCord's application.

### I.  Facts and Proceedings

McCord alleges she became disabled on July 13, 2017[1] because of back and leg problems, depression, and anxiety.[2] An Administrative Law Judge ("ALJ") held a hearing on September 10, 2020, and heard testimony from McCord, who was represented by counsel, and a vocational expert ("VE").[3] In an opinion dated October 27, 2020, the ALJ determined that McCord was not disabled within the meaning of the Social Security Act.[4] The Appeals Council denied her request for review on January 5, 2021, making the decision of the ALJ the final decision of the Commissioner.[5]

---

[1] R:166.
[2] R:201.
[3] R:32-66.
[4] R:13-25.
[5] R:3-5.

McCord argues in this appeal that the ALJ erroneously evaluated the medical opinions of two doctors and a physical therapist.

## II.   Discussion

### A.   Legal Standards

Judicial review of the Commissioner's decision is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole; and (2) whether the Commissioner applied the proper legal standard.[6] Substantial evidence "is more than a mere scintilla and less than a preponderance."[7] The Commissioner's findings will be upheld if supported by substantial evidence.[8] In evaluating a disability claim, the Commissioner must follow a five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe medically determinable physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant can perform other relevant work.[9]

Courts utilize four elements of proof to determine whether there is substantial evidence of disability: (1) objective medical evidence; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.[10] A court cannot, however, reweigh the evidence, try the issues

---

[6] *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)).
[7] *Hill v. Berryhill*, 718 F. App'x 250, 253-54 (5th Cir. 2018) (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th 2002)).
[8] *Masterson*, 309 F.3d at 272.
[9] 20 C.F.R. § 404.1520; *Boyd v. Apfel*, 239 F.3d 698, 704-05 (5th Cir. 2001).
[10] *Perez*, 415 F.3d at 462.

*de novo*, or substitute its judgment for the Commissioner's.[11] The Commissioner, not the courts, must resolve conflicts in the evidence.[12]

### B.     Residual Functional Capacity

Residual functional capacity, or RFC, is the most an individual can still do despite his or her limitations.[13] The responsibility to determine a claimant's RFC belongs to the ALJ.[14] The ALJ must consider a claimant's abilities despite his or her physical and mental limitations based on the relevant evidence in the record.[15] The ALJ must consider the limiting effects of an individual's impairments, even those that are non-severe, and any related symptoms.[16] An RFC finding is used to determine if the claimant can still do his or her past jobs.[17] If the claimant cannot, the RFC is then used to determine whether the claimant can do other jobs in the national economy.[18]

### C.     The ALJ's Findings

In this case, the ALJ found that McCord's severe impairments were "degenerative disease of the lumbar spine, degenerative joint disease of the left knee, multiple hernias, obesity, bipolar disorder, major depressive disorder, anxiety disorder, and somatic symptoms."[19] They were not, however, individually or in combination severe enough to meet or equal an impairment listed in the appendix to the regulations.[20] The ALJ found that McCord could still perform "light work,"

---

[11] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).
[12] *Id*.
[13] 20 C.F.R. § 404.1545(a)(1).
[14] *Id*. at § 404.1546(c); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).
[15] *Perez*, 415 F.3d at 461-62.
[16] *See* 20 C.F.R. §§ 404.1529(d)(4), 404.1545(a)(2).
[17] *Perez*, 415 F.3d at 462; 20 C.F.R. § 404.1520(e).
[18] *Id*.
[19] R:16.
[20] R:16-19.

with certain limitations,[21] and that there are jobs in the national economy that she can perform.[22] Accordingly, the ALJ found McCord not disabled and not entitled to disability insurance benefits.[23]

### D. Dr. White's Opinion

McCord argues that the ALJ improperly evaluated Dr. Robert White's mental health assessment of McCord.[24] Dr. White, a state agency medical consultant, examined McCord's medical records and issued a December 2019 assessment in which he found McCord only "moderate(ly) limited" in her ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by them; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.[25]

Importantly, Dr. White also found that McCord had no significant limitations with respect to understanding and remembering; carrying out very short and simple instructions; sustaining an ordinary routine without special supervision; making simple work-related decisions; completing a normal workday and workweek without interruptions from psychologically based symptoms and

---

[21] R:19-23. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).
[22] R:24-25.
[23] R:25.
[24] ECF No. 12, at 10-15. I note that the caption to McCord's argument includes a reference to Dr. Alvin Smith, but argument itself relates only to Dr. Smith's mental health assessment.
[25] R:94-95.

performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; asking simple questions or requesting assistance; and maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness.[26] Dr. White crystallized his mental health assessment of McCord as follows:

> [McCord] can understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, & respond appropriately to changes in routine work setting.[27]

McCord argues that the ALJ "completely fail[ed] to address [the] 'supportability' and 'consistency'" of, [28] and "rejected,"[29] Dr. White's assessment. The record belies this argument. The ALJ explicitly states that he "evaluated the opinion evidence of the State non-examining medical consultants," to include the opinions that McCord "exhibited no more than moderate difficulties affecting her ability to sustain concentration" and had moderate difficulty interacting with others.[30] These conclusions derive from Dr. White's report, and the ALJ opinion cites to it.[31]

The ALJ also explained that these opinions are persuasive and "supported by the documented findings" that other medical sources generated.[32] For example, the ALJ noted that Dr. Manouchehr Refaeian recorded normal psychiatric findings in April 2018,[33] September 2018,[34] November 2018,[35] and April 2019,[36] to include good cooperation; good orientation to time, place, and person; no mood swings or psychotic features; and good insight and intact memory and

---

[26] *Id*.
[27] R:95.
[28] ECF No. 12, at 13 (emphasis omitted).
[29] *Id*. at 14.
[30] R:23.
[31] *Id*., citing "Ex. 4A." (Dr. White's report is Ex. 4A at 12-14, which in this appeal is R:93-95).
[32] *Id*.
[33] R:22, citing R:408 (Ex. 4F/44).
[34] *Id*., citing R:390 (Ex. 4F/26).
[35] *Id*., citing R:379 (Ex. 4F/15).
[36] *Id*., citing R:371 (Ex. 4F/7).

judgment.[37] The ALJ also noted that a psychologist found McCord's attention and concentration were in the average range.[38] Finally, the ALJ relied on a September 2017 cognitive and functional evaluation during which Dr. Heydemann found that McCord had normal speech, appropriate mood and affect, logical and normal thought processes and content, normal memory, and normal attention span and concentration.[39]

Ultimately, the ALJ's mental RFC assessment found that McCord could:

> …independently perform more than simple but less than complex three to four-step tasks that require only occasional judgment…is unable to perform tasks involving multilayer decision making (sic) or supervisory tasks…[and] can perform job tasks…[that] do not have to be completed within a strict time deadline.[40]

This mental RFC assessment is more restrictive than what Dr. White's moderate limitations findings call for, and much more restrictive than what the records from Drs. Refaeian and Heydemann call for. Moreover, given the totality of the records on which this restrictive mental RFC is based, I find no support for McCord's second argument that Dr. White's records show the RFC is flawed based on work attendance and punctuality grounds. My review of the record reflects that substantial evidence supports the ALJ's decision on these issues and he applied the proper legal standards.

### E. Physical Therapist Torres' Opinion

McCord next argues that "the ALJ failed to consider the opinion of plaintiff's physical therapist, Mr. Torres."[41] Actually, the records reflect that the ALJ twice relied upon Torres' records which show "good improvement" during McCord's twenty-six physical therapy sessions after

---

[37] R:371.
[38] R:527.
[39] R:304-305.
[40] R:19.
[41] ECF No. 12, at 22.

surgery.[42] Indeed, the ALJ relied upon Torres' records to find an actual treating physician's opinion "not persuasive."[43] Finally, to the extent that McCord argues that the ALJ should have adopted the lifting, carrying, standing, and walking limitations Torres found in November 2018, Drs. Rowlands[44] and Reddy,[45] after reviewing later medical records, issued opinions in 2019 finding less restrictive limitations in this regard. This argument fails.

### F. Dr. Refaeian's Opinion

McCord's last argument is that the ALJ failed to evaluate Dr. Refaeian's opinion, or alternatively, improperly rejected it. In August 2020, Dr. Refaeian opined that McCord could not "stand[] or walk for more than 5-10 minutes," was "unable to kneel down, squat down, forward bend the spine, go up ladders…," and her "lifting ability [was] also limited to 10 pounds."[46]

Contrary to McCord's argument, the ALJ did evaluate whether Dr. Refaeian's opinions were supported and consistent with the other medical evidence in the record. In order to find Dr. Refaeian's opinions "not persuasive," the ALJ measured them against the "good improvement" reflected in physical therapist Torres' records, along with Dr. Michael's records.[47] Dr. Michael's records reflect that McCord had normal strength in all extremities,[48] was able to lift, carry, and handle light objects, had normal hand and finger dexterity, and could rise from a sitting position without difficulty.[49] Dr. Michael also noted that McCord could do normal daily activities such as cooking, washing dishes, and making her bed.[50]

---

[42] R:21-22.
[43] R:22.
[44] R:75.
[45] R:92.
[46] R:675.
[47] R:22, citing Ex. 2F (physical therapist Torres records) and Ex. 5F (Dr. Michael's records).
[48] R:517.
[49] R:518.
[50] R:515.

7

Again, the responsibility to determine a claimant's RFC belongs to the ALJ,[51] and the ALJ, not the court, resolves conflicts in the evidence.[52] I find no error, legal or otherwise, in the ALJ's evaluation and treatment of Dr. Refaeian's opinion.

## Conclusion

The ALJ properly considered all the medical evidence in this case, substantial evidence supports his decision, and there is no legal error.

**AFFIRMED**.

**SIGNED** and **ENTERED** August 25, 2022.

**LEON SCHYDLOWER**
**UNITED STATES MAGISTRATE JUDGE**

---

[51] *Ripley*, 67 F.3d at 557.
[52] *Newton*, 209 F.3d at 452.